**John B. FENN, Plaintiff–Counter–Defendant–Appellant,**

v.

**YALE UNIVERSITY, Defendant–Counter–Claimant–Appellee.**

No. 05–2663–cv.

United States Court of Appeals,
Second Circuit.

May 18, 2006.

Brenda R. Sharton, Lana S. Shiferman, on the brief, Goodwin Proctor LLP, Boston, MA, Richard I. Samuel, Goodwin Proctor LLP, of counsel, New York, NY, for Plaintiff–Counter–Defendant–Appellant.

Johnathan M. Frieman, Kiran G. Ghia, on the brief, Wiggin and Dana LLP, New Haven, CT, for Defendant–Counter–Claimant–Appellee.

PRESENT: Hon. CHESTER J. STRAUB, Hon. THOMAS J. MESKILL, Hon. ROBERT A. KATZMANN, Circuit Judges.

### SUMMARY ORDER

John B. Fenn appeals from the judgment of the United States District Court for the District of Connecticut (Christopher F. Droney, *Judge*), resolving in Yale's favor a dispute between Fenn and Yale University over the ownership of a patent. Upon review of the record and applicable law, the judgment of the District Court is affirmed.

The patent at issue is for an invention developed by Fenn while he was a faculty member at Yale. Under Yale's longstanding patent policy, inventions by faculty members belong to Yale rather than the inventor, and licensing royalties are shared between the two. Following a bench trial, the District Court found that by failing to disclose the significance of his invention to Yale, and patenting the invention in his own name, Fenn breached that policy, thus defrauding Yale, and breaching his contract with and fiduciary duties toward Yale. In a subsequent decision, the District Court found that Fenn's actions constituted civil theft. The District Court ordered Fenn to assign the patent to Yale.

The issue on appeal is narrow. Fenn argues that Yale's claims to the patent are preempted by a prior determination by the National Institutes of Health ("NIH") under Section 202(d) of the Bayh–Dole Act, 35 U.S.C. § 200 *et seq.*, that Fenn was the patent's rightful owner. The District Court rejected Fenn's argument, finding as a matter of fact that the NIH never made any such determination.

"The district court's findings of fact after a bench trial are not to be overturned unless they are clearly erroneous." *Ceraso v. Motiva Enters., LLC,* 326 F.3d 303, 316 (2d Cir.2003). We may not "second-guess either the trial court's credibility assessments or its choice between permissible competing inferences." *Id.*

The District Court's finding was far from clearly erroneous. Fenn's only admissible evidence for the NIH's purported determination is a letter from Fenn to the NIH, dated March 25, 1993, to which Fenn attached a form licensing the patent to the United States Government. A clause at the bottom of the letter, which Fenn requested that the NIH sign and return for his records, read "I have received this letter and its accompanying license form. To my knowledge all the associated obligations of Yale and the inventor to the U.S. Government have now been met." An official of the NIH signed that clause on April 2, 1993.

Fenn argues that the only reasonable inference from the NIH's April 2, 1993 signature and its acceptance of a license form signed by Fenn is that the NIH had determined that Fenn was the patent's rightful owner. The District Court found that inference implausible—in part because, pursuant to the Bayh–Dole Act, a federal agency such as the NIH may only grant an inventor's request to retain rights to an invention subject to the Act when the contractor (in this case Yale) has elected not to retain rights to the invention. *See* 35 U.S.C. § 202(d). In fact, Yale had informed the NIH of its intention to retain the rights. The District Court did not find it plausible that the NIH would have made a determination of title to the patent in violation of the controlling statute and in the implicit and ambiguous manner suggested by Fenn. Rather, the District Court found it more likely that the NIH construed Fenn's signature of the license form as that of an official of grantee Yale and

not as grantee in his own right. This is a reasonable inference from the facts.

Moreover, even if we were to assume that the NIH understood Fenn to be acting on his own behalf, we would not find the inference that the NIH determined Fenn to be the patent's owner at all compelling. Fenn had secured the patent in his own name; by accepting the license from Fenn, the NIH protected itself from litigation by Fenn or his assignees over the Government's use of the license. In so doing, the NIH was acting in accord with the Bayh–Dole Act's command that "[e]ach funding agreement [ ] shall contain appropriate provisions to effectuate [that] the Federal Agency shall have a nonexclusive, nontransferrable, irrevocable, paid-up license" to any subject invention. 35 U.S.C. §§ 202(c), 202(c)(4). Nothing in the NIH's desire for a license from Fenn suggests that the NIH had made any determination whatsoever as to ownership of the patent as between Fenn and Yale.

Because we affirm the District Court's finding that the NIH never made a determination of title to the patent in Fenn's favor, we do not need to reach the question of whether such a determination would have preemptive effect.

We have considered all of Fenn's other arguments and have found them to be without merit. For the reasons set forth, we AFFIRM the order of the District Court.